# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

HAITHEM HASAN,

                                        Plaintiff,

              v.                                        5:18-CV-806
                                                       (GLS/ATB)
ONONDAGA COUNTY, et al.,

                                        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

HAITHEM HASAN
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court an amended[1] civil rights complaint ("AC"),

together with an application to proceed in forma pauperis ("IFP"), filed by pro se

plaintiff, Haithem Hasan. (Dkt. Nos. 3, 4).

## I.   **IFP Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay

the filing fee.[2] (Dkt. No. 4).  This court agrees, and finds that plaintiff is financially

eligible for IFP status.

---

[1] The court notes that plaintiff's "Amended Complaint" is a copy of his original complaint
attached to a form-civil rights complaint.  The defendants, facts, and claims are identical in both
complaints. (Dkt. Nos. 1, 3).

[2] Plaintiff filed his original complaint on July 9, 2018. (Dkt. No. 1).  Plaintiff's action was
administratively closed due to his failure to comply with the filing fee requirement. (Dkt. No. 2).
Plaintiff was given the opportunity to file the appropriate documents for IFP or pay the filing fee. (*Id.*)
On July 11, 2018, plaintiff filed his amended complaint with a new motion for IFP status. (Dkt. Nos. 4,
4, 5).  Although plaintiff's motion for IFP was still incomplete, plaintiff argued that the facility in
which he is incarcerated refused to provide him with the information necessary for him to properly
complete his motion. (Dkt. No. 4).  On July 11, 2018, the Honorable Gary L. Sharpe, Senior District
Court Judge reopened the action, and on July 19, 2018, he issued a Text Order, excusing plaintiff from
the certification requirement and determining that the motion for IFP was complete and ready for my
review. (Dkt. No. 8).

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint

under the above standards.

## II.    **Complaint**

In this civil rights amended complaint, plaintiff has sued Onondaga County; William Fitzpatrick, the District Attorney of Onondaga County; Michael Manfredi, an Assistant District Attorney; seventeen Syracuse Police Officers/Detectives; a "P.I./ex-Detective, and Frank Fowler, the City of Syracuse Chief of Police. (Dkt. No. 3). Plaintiff's amended complaint is a statement of facts ("SOF") which describes encounters with police officers, detectives, and prosecutors, occurring on July 10, 2015, December 26, 2015, May 18, 2016, August 7, 2016, and February 2017.[3] (SOF ¶¶ 1-5) (Dkt. No. 3).

### 1.    **July 15, 2015**

Plaintiff alleges that on July 15, 2015, apparently as the result of an incident in Armory Square in the city of Syracuse, he was charged with second degree assault, third degree criminal possession of a weapon, second degree harassment, and second degree menacing. (SOF ¶ 1 at 3).  Plaintiff claims that defendant Police Officer ("PO") Szekecs arrived on the scene and arrested plaintiff.  Shortly thereafter, several officers arrived "with witnesses" for a "show-up" identification.  Plaintiff alleges that he was removed from the police vehicle in which he had been seated by defendant Szekecs so that defendants PO Robert Jones, PO David Ciciriello, PO Jason Springer, and PO Ryan Blake could have their "witnesses" identify the plaintiff.  Plaintiff alleges that the show-up witnesses all identified plaintiff as the perpetrator, but when defendant

---

[3] Plaintiff has numbered the paragraphs of his SOF, and he has numbered the pages of his amended complaint at the bottom of the page.  Thus, the court will cite to the SOF paragraph number as well as the page number on which the relevant fact appears.

Detective Tara Kelil and PO J.M. Giarusso conducted photo arrays with "other" witnesses, those individuals were unable to identify the plaintiff. (*Id.*)

Plaintiff claims that defendant ADA Manfredi continued to prosecute plaintiff even though Keila Carrasquillo admitted to the assault for which plaintiff was being prosecuted. Plaintiff states that Ms. Carasquillo "through sworn statements, grand jury, and trial testimony" tried to take responsibility for the crimes. Plaintiff claims that, when ADA Manfredi heard about this, he threatened Ms. Carasquillo with perjury if she testified on plaintiff's behalf. Based on this threat, Ms. Carasquillo "pled the Fifth" on all matters, and plaintiff was convicted of the charges. Plaintiff also alleges that after his conviction, but prior to sentencing, Ms. Carasquillo again attempted to take the blame for the crimes, but defendant Manfredi told her that he was asking for a lengthy prison sentence for the plaintiff because the Syracuse Police Department had numerous interactions with plaintiff that did not result in convictions. Plaintiff was sentenced to 25 years incarceration.[4] (SOF ¶ 1 at p.4). Plaintiff states that the defendants' actions were "the direct cause of plaintiff's injuries." (*Id.*)

### 2.    December 26, 2015

Plaintiff states that on December 26, 2015, he was charged with second degree criminal possession of a weapon, resisting arrest, and first degree reckless endangerment as the result of an incident at the Mobile Gas Station on South Geddes Street in Syracuse, New York. (SOF ¶ 5 at 4). Plaintiff states that defendants PO J.M. Giarusso and Ryan Blake "charged" plaintiff, even though plaintiff did not have a weapon. Plaintiff states that the officers told him that they had an eyewitness, but that

---

[4] Plaintiff is currently incarcerated.

individual never provided a "statement."  Plaintiff claims that defendant Manfredi still proceeded to present the case to a grand jury.  Although the grand jury returned a "no bill," defendant Manfredi stated that plaintiff should have been indicted because he was well-known to the Syracuse police. (*Id.*)

### 3.    May 18, 2016

On May 18, 2016, plaintiff states that he was charged with criminal possession of a controlled substance in the fifth and seventh degrees. (SOF ¶ 3 at 4).  Plaintiff claims that defendants Detectives Scott Henderson and J. Ballagh of the Syracuse Police Department were investigating the residents of 303 Merriman Avenue in Syracuse, New York, and plaintiff was arrested when he walked by this location, while the defendants were getting out of their vehicles, "in the process of their raid," even though plaintiff was not "named in the investigation. (*Id.*)  Plaintiff claims that "John Doe[s] 1-10 [and] Jane Doe[s] 1-10,[5] Detective Scott Henderson and Detective J. Ballagh" arrested plaintiff "as part of their investigation." (SOF ¶ 3 at 4-5).

Plaintiff claims that while arresting the plaintiff "the officers" proceeded to "beat" him, causing visible bruises on plaintiff's face "and other parts of his body." (SOF ¶ 3 at 5).  Plaintiff states that, while he was being arraigned on May 19, 2016, he was charged with the additional crimes of resisting arrest and obstructing governmental administration. (*Id.*)  Plaintiff states that after six months, the grand jury returned a "no-bill." (*Id.*)

### 4.    August 7, 2016

On August 7, 2016, plaintiff was arrested at the Mobile gas station at 631 South

---

[5] The John and Jane Does are not named defendants in this action.

Geddes Street in Syracuse, New York. (SOF ¶ 4 at 5).  Plaintiff was charged with criminal possession of a weapon, second degree.  Plaintiff states that defendants PO Chad King; PO Ryan Blake; PO Chad Picotte; PO Jacob Breen; PO Joseph Taylor; PO Sean Ryan; and PO John Tassani were "involved with the incident." (*Id.*)  Plaintiff claims that he was on a "different street" when the "shots fired" incident occurred.  PO King was the first to respond, and when he found "nothing of significance," he began to "roam around."  He found plaintiff in a "driveway," where he and other individuals were sitting in a vehicle.  Plaintiff states that he and two other individuals ran away as defendant King approached the car.  Defendant King radioed for help, and defendants Picotta and Blake ultimately arrested the plaintiff.  Plaintiff claims that, after he sat in the police vehicle for two hours, "they" came back and told plaintiff that he "beat [them]" when he was arrested at the same location the last time, but he would not get away "this time," because they had a gun in evidence. (*Id.*)

Plaintiff claims that one of the other two occupants of the car claimed ownership of the gun, but defendant Blake "coerced" him into stating that the gun belonged to plaintiff.  Plaintiff claims that when he appeared before the grand jury on August 12, 2016, defendants ADA Manfredi and Private Investigator James Quatrone "guarantee[ed]" plaintiff that he would be indicted, and he would be put in prison where he belonged. (*Id.*)  Plaintiff was later indicted for second degree criminal possession of a weapon.  Plaintiff states that he had a "suppression hearing" on June 19, 2017, at which defendant King testified. (SOF ¶ 4 at 6).  The court denied suppression.[6]

---

[6] Plaintiff did not exactly state what evidence he moved to suppress.  The court assumes that he may have moved to suppress the gun, and there is no indication if any other evidence or statements were obtained that may have been included in the motion to suppress.

Plaintiff states that, since he was already incarcerated on the first degree assault charge, he offered to plead guilty to an unidentified charge. Defendant Manfredi turned down plaintiff's offer because he believed that plaintiff was "public enemy #1." (*Id.*) Plaintiff states that he was acquitted of the charges by a jury on November 15, 2017. (*Id.*)

### 5.    February 2017

Finally, plaintiff alleges that he filed a notice of appeal in the "July 2015 conviction" in February of 2017. (SOF ¶ 5 at 6). Plaintiff states that defendant District Attorney William Fitzpatrick was "put on notice through the direct appeal about the actions of the Syracuse Police Department," defendant Manfredi, and defendant Quatrone. (*Id.*) Plaintiff claims that, "through his office," defendant Fitzpatrick "vigorously" defended the appeal and the actions of defendants Manfredi and Quatrone. Plaintiff claims that "defendants [sic] actions was [sic] the direct cause of plaintiff's injuries." (*Id.*)

In a section, entitled "Injuries," plaintiff states that he lives "in constant fear to walk the streets," because he will be "constantly harassed and arrested by defendants." (SOF ¶ IV(e) at 6). Plaintiff claims that he has "lost his liberty interest," his job, and his ability to provide for his children, due to the defendants' unconstitutional actions. (*Id.* at 6-7). Plaintiff seeks substantial compensatory and punitive damages.

## III.    **Proscutorial Immunity**

### A.    **Legal Standards**

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence);

7

*Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

## B.    Application

Plaintiff has named ADA Manfredi and DA William Fitzpatrick as defendants in this action. However, the only actions that plaintiff attributes to ADA Manfredi deal with his prosecution of plaintiff's criminal charges. Absolute immunity protect him from suit under the facts stated by plaintiff, regardless of whether ADA Manfredi called plaintiff "public enemy #1," and even if he refused to accept plaintiff's offer of a plea to some unidentified charge. This immunity applies whether plaintiff was convicted or acquitted of the charges. Thus, the case must be dismissed with prejudice as against defendant Manfredi.

The same is true for District Attorney Fitzpatrick. The only facts alleged against defendant Fitzpatrick are that he "vigorously," "through his office," defended plaintiff's appeal. The district attorney is protected by absolute immunity. In addition, plaintiff has failed to allege that defendant Fitzpatrick was personally involved in any

8

constitutional violation.  Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  Simply alleging that defendant Fitzpatrick vigorously defended the appeal "through his office" is insufficient to allege personal involvement even if the prosecutor were not already protected by absolute immunity.  Thus, the complaint may be dismissed with prejudice as against District Attorney Fitzpatrick.

### IV.  <u>Plaintiff's Claims</u>

#### A.    Legal Standards

A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

#### B.    Application

##### 1.    July 2015 (SOF ¶ 1)

Plaintiff states that he is still incarcerated on the July 2015 conviction for first degree assault.[7]  He also states that he filed a notice of appeal in February of 2017.

---

[7] In the SOF, plaintiff alleges that in November of 2017 (after the August 7, 2016 incident), he was already incarcerated on "an assault 1ˢᵗ" conviction. (SOF ¶ 4 at 6).  However, at the beginning of the complaint, he states that, in July of 2015, he was arrested for, inter alia, ***second degree*** assault, and that he was convicted and sentenced to 25 years. (SOF ¶ 1 at 3-4).  A check of the Department of Corrections and Community Supervision ("DOCCS") "inmate lookup" shows that plaintiff is currently incarcerated for a conviction of ***first degree assault***. for which he was sentenced to 25 years incarceration. http://nysdoccslookup.doccs. ny.gov/GCA00P00/WIQ1/WINQ000.  He was received by DOCCS on February 23, 2017. (*Id.*)  Plaintiff states that he was convicted of the 2015 charges, and

Plaintiff does not indicate that there has been any decision on the appeal, and if he is still incarcerated, either the appeal has not been decided, or the appeal was denied. Because plaintiff's conviction has not been overturned by a state appellate court nor called into question by a federal habeas action, plaintiff may not sue defendants at this time if the resolution of the claim in plaintiff's favor would necessarily invalidate that conviction.

Thus, in this case, plaintiff may not sue any defendants who were involved in the 2015 conviction if a decision in plaintiff's favor would render the 2015 conviction invalid. Plaintiff alleges that he was forced to stand in handcuffs next to defendant Szakecs, while defendants Jones, Ciciriello, Springer, and Black conducted a "show-up" identification of plaintiff, during which all of the eyewitnesses identified him, while defendants Giarusso and Kalil subsequently conducted unsuccessful photo arrays. Plaintiff seems to be arguing that the show-up identification violated his constitutional rights, evidenced by the fact that two other witnesses did not identify plaintiff in a photo array.

Plaintiff also claims that another individual, who initially confessed to the crime, asserted the Fifth Amendment, after being threatened with perjury by defendant Manfredi. (SOF ¶ 1 at 3). As stated above, ADA Manfredi would be entitled to absolute immunity. In addition, a decision in plaintiff's favor regarding improper identification or prosecutorial misconduct would clearly affect the validity of the

---

there is no indication that they were reversed. Thus, it is possible that the amended complaint may contain a typographical error in the first paragraph of the SOF, and that the July 2015 arrest involved first degree assault, not second degree assault.

conviction.[8]  Thus, plaintiff's may not sue any of the defendants who he claims were involved in the alleged improprieties at this time, and may not sue defendant Manfredi, even if plaintiff's conviction is ever overturned.

It is unclear why plaintiff has named detective Kalil and officer Giordano because the only facts stated against them are that they conducted a photo array, after which plaintiff was **not** identified.  It is also unclear why plaintiff has named Officer Patricia Sargent.  Plaintiff only asserts that defendant Sergeant detained a suspect who later confessed to the crime of which plaintiff was convicted.  Plaintiff makes no other claims against this individual, nor does he state how she violated his rights in any way. Thus, the plaintiff's claim may also be dismissed as against defendants Kalil, Giordano, and Sargent.

### 2.    December 26, 2015 (SOF ¶ 2)

Plaintiff alleges that the grand jury returned a "no bill" after the December 26, 2015 arrest. (SOF ¶ 2 at 4).  Thus, *Heck* does not bar plaintiff's action.  Plaintiff names three individuals in this section of his amended complaint.  Plaintiff claims that defendant Officer Ryan Blake and defendant Giarusso arrested plaintiff for criminal

---

[8] If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (there is no constitutional right not to be subjected to an unconstitutionally suggestive identification). *See also Delamota v. City of New York*, 683 F. App'x 65, 66-67 (2d Cir. 2017) (when an officer creates false information likely to influence a jury's decision and forwards that information to the prosecutor, he or she violates the plaintiff's right to a fair trial).  In addition, in order to state a claim, plaintiff would have to show that the officers misled or pressured the prosecution or the trial judge. *Id.*  It is the admission of the testimony carrying a likelihood of misidentification which violates a defendant's right to due process. *Wray, supra.*  In the plaintiff's amended complaint, he cites no facts beyond the alleged show-up identification. In fact, he states that two photo arrays were unsuccessful in identifying the plaintiff.  It is unclear what evidence was admitted at trial.  Thus, at this time, there are multiple reasons to dismiss any claims against the officers who plaintiff alleges were involved in the alleged show up.

possession of a weapon, resisting arrest, and reckless endangerment, even though plaintiff did not have a weapon, nor did the officers have any eyewitnesses "that the prosecutor could present." Plaintiff claims that ADA Manfredi prosecuted plaintiff notwithstanding the lack of evidence. (*Id.*)

As stated above, defendant Manfredi has absolute immunity. Although it is unclear what plaintiff may be attempting to allege against defendants Giarusso and Blake, pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). With respect to defendants Blake and Giarusso, plaintiff may be attempting to assert a claim for false arrest.[9] In order to prevail on a false arrest claim, plaintiff must plausibly allege that the defendant intended to confine him, plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not "otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted)). An arrest by a police officer is privileged if it is based on probable cause. *Id.* at 135. However, "'[t]he defendant has the burden of raising and proving the affirmative defense of probable cause.'" *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citations omitted).

---

[9] The court has also considered whether plaintiff may be attempting to allege claims of malicious prosecution. Malicious prosecution has four elements. *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). The defendants must have commenced or continued a criminal proceeding against the plaintiff, the proceeding terminated in the plaintiff's favor, there was no probable cause for the criminal proceeding, and the proceeding was instituted with "actual malice." *Id.* (citations omitted). Police officers do not generally commence or continue criminal proceedings against an individual, but malicious prosecution claims may still be maintained if the officer is found to play an active role in the prosecution, such a giving advice and encouragement to the authorities to act. *Id.* (citations omitted). As it is written, most of plaintiff's allegations are insufficient to state claims for malicious prosecution. However, if plaintiff amends his complaint, he may add any facts that he believes would assert a claim for malicious prosecution as against the officers.

In this case, although plaintiff alleges that the defendants arrested him for weapons possession without a weapon, he also states that he was arrested for resisting arrest and reckless endangerment.  Plaintiff does not describe the facts surrounding the particular arrest.  It is well-established that a law enforcement official has probable cause to arrest if he has received information from some person, normally the putative victim or an eyewitness. *Felix v. New York State DOCCS*, No. 16-CV-7978, 2018 WL 3542859, at *7 (S.D.N.Y. July 23, 2018) (citing inter alia *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).

In the amended complaint, plaintiff states that the officers "claimed they had an eyewitness." (SOF ¶ 2 at 4).  However, the "eyewitness" "never provided a statement to these officers."  The failure to give a statement does not show that the eyewitness did not exist.  However, if there was no witness, and there was no weapon, it is plausible that the officers did not have probable cause to arrest plaintiff.  The facts surrounding this arrest are not clear, and as stated above, the plaintiff was also arrested for resisting arrest and reckless endangerment.  The court will allow this claim to proceed at this time against officers Blake and Giarusso, but notes that this ruling is not meant to suggest that the claim would survive a supported motion for summary judgment.

### 3.    May 18, 2016 (SOF ¶ 3)

Plaintiff appears to claim that he was improperly arrested on May 18, 2016 because he was not "named" as a suspect in a drug investigation, involving the residents of 309 Merriman Avenue. (SOF ¶ 3 at 4).  Plaintiff states that he was arrested by defendants Henderson and Ballagh for just "walking by the residence" as the

officers were getting out of their vehicles.[10]  (*Id.*)   Plaintiff states that while arresting

him, the "officers beat plaintiff," causing multiple bruises on plaintiff's face and other

parts of his body. (SOF ¶ 3 at 5).  Plaintiff states that, at his May 19, 2016 arraignment,

he was charged with the "additional crimes" of resisting arrest and obstructing

governmental administration. (*Id.*)  Plaintiff claims that, after six months, the grand jury

returned a "no-bill."

*Heck* does not bar plaintiff's claim on the false arrest issue.  In addition, plaintiff

seems to be claiming that some officers used excessive force while they were arresting

him.  The Fourth Amendment prohibits the use of unreasonable force by a police officer

in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing

Graham v. Connor, 490 U.S. 386, 395 (1989)).  A claim of excessive force during the

arrest would not be barred by *Heck* even if plaintiff had been subsequently convicted of

a crime, because a finding in favor of plaintiff on a claim of excessive force would not

necessarily invalidate his conviction.

However, plaintiff does not specify which of the officers were involved in

beating him as he was being arrested.  In the previous sentence, he stated that

defendants Henderson and Ballagh, along with John and Jane Does 1-10 arrested him.

As stated above, plaintiff must allege personal involvement by specific defendants in

---

[10] Plaintiff also states that, in addition to defendants Handerson and Ballagh, "officers John Dos [sic] 1-10 [and] Jane Doe [sic] 1-10 "arrested plaintiff." (SOF ¶ 3 at 4).  Plaintiff has not named any John or Jane Does in the caption of his amended complaint, and he would not be able to serve unnamed officers without obtaining their names.  It also seems unlikely that it took twenty-two officers to arrest the plaintiff.  Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983. *Minott v. Duffy*, No. 11 Civ. 1217, 2014 WL 1386583, at *11 (S.D.N.Y. Apr. 8, 2014) (quoting *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 747 (S.D.N.Y.2005)).  Plaintiff has named the two individuals who he claims were the principle officers involved in his August 7, 2016 arrest.  Thus, the court will not consider the John or Jane Does as defendants.

his claims.  As written, plaintiff's amended complaint does not state a claim of excessive force as against any particular officer or officers with respect to this incident. Thus, the court will recommend dismissing the excessive force claim without prejudice to amendment.

However, the court will not recommend dismissing the false arrest claim for the May 18, 2016 arrest at this stage of the proceedings.  Plaintiff claims that defendants Henderson and Ballagh arrested him for "walking by" the residence that was being raided "as part of their investigation." (SOF ¶ 3 at 4-5).  If defendants arrested plaintiff without probable cause, then plaintiff could have a claim for false arrest.  The court is not making any determination of the merits of this claim, or whether such a claim could withstand a properly supported dispositive motion.

### 4.    August 7, 2016 (SOF ¶ 4)

Plaintiff alleges that on August 7, 2016, he was arrested for second degree criminal possession of a weapon, and that defendants King, Blake, Picotta, Breen, Taylor, Ryan, and Tassini were "all" involved in "the incident." (SOF ¶ 4 at 5). Plaintiff then states that defendant PO King responded to a "shots fired" call, but found nothing of "significance" at the relevant location, so he decided to "roam" around, when he found plaintiff and "other occupants in a vehicle" in a driveway. (*Id.*)  Plaintiff states that whe defendant King got out of his vehicle and approached plaintiff and the other occupants of the car, plaintiff and two others ran away. (*Id.*)  Plaintiff states that Officer King pursued and radioed a description of plaintiff's clothing to other officers. Plaintiff was ultimately apprehended and arrested by defendants Picotte and Blake. (*Id.*) A weapon was found, but plaintiff maintains that one of the other occupants told defendant Blake that it was his weapon, until defendant Blake "coerced" him into

stating that it was the plaintiff's weapon.  Plaintiff was indicted, and subsequently moved to suppress the weapon, but the motion was denied.  Plaintiff states that he was acquitted by a jury.  Because plaintiff was acquitted of the charges, *Heck* does not bar an action for false arrest or malicious prosecution.

The only officers that plaintiff alleges were involved in his "arrest" were defendants King, Picotta, and Blake.  Thus, none of the other officers that plaintiff names as "involved in the incident" may be held liable for false arrest. *See Minott v. Duffy*, *supra*, 2014 WL 1386583, at *11 (quoting *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 747 (S.D.N.Y.2005) (Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983.)  Plaintiff never states how defendants Breen, Taylor, Ryan, and Tassini were "involved" in the arrest, and therefore the action may be dismissed without prejudice as to these defendants.

The issue in a false arrest claim is whether the defendants had probable cause to arrest plaintiff.[11]  If the complaint itself establishes that the defendants had probable cause, the complaint may be dismissed for failure to state a claim. *Overby v. Fabian*, No. 17-CV-3377, 2018 WL 3364392, at *9 (S.D.N.Y. July 10, 2018).  Plaintiff concedes that defendant King reported to a "shots fired" call, even though he did not find anything "of significance" at the location of the alleged shots fired.  The fact that defendant King decided to "roam" around the area is not unusual, given that often individuals who fire weapons do not stand around waiting for the police to arrive. When defendant King found plaintiff and other individuals in a car, plaintiff states that he and two other occupants ran from the officer.  However, under New York law,

---

[11] Probable cause is also a defense to malicious prosecution. *Wright v. Stephens*, No. 3:17-CV-1499, 2018 WL 3241352, at *3 (D. Conn. July 3, 2018) (citation omitted).

"running from the police is not itself a crime." *Parker v. Bulik*, No. 11-CV-5412, 2017 WL 3396440, at *12 (E.D.N.Y. Aug. 5, 2017) (citing *People v. Howard*, 50 N.Y.2d 583, 586 (1980))[12]. Plaintiff concedes that a weapon was ultimately found, and that one of the other occupants admitted that the weapon was his. However, the other occupant allegedly recanted his original statement when defendant King "coerced" him into saying that the gun belonged to the plaintiff. Given the factual issues raised by plaintiff, this claim of false arrest survives initial review.[13]

Finally, plaintiff claims that when he appeared before the grand jury, defendant Quatrone (an ex-detective) and the prosecutor stated that "we guarantee that you will be indicted today . . . and you will rot in prison where you belong." The prosecutor is entitled to absolute immunity, and it is unclear what plaintiff is alleging against defendant Quatrone. Thus, the complaint may be dismissed as to the officers who plaintiff does not claim were "involved" in the arrest as well as defendant Quatrone, who was not involved in anything other than perhaps verbal abuse of plaintiff. It is

---

[12] "Although flight alone is generally not sufficient to justify a stop or pursuit, petitioner's flight may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause." *Morgan v. Superintendent*, 88 F. Supp. 2d 312, 318 n. 48 (S.D.N.Y. 2000) (citing, inter alia, *Sibron v. State of New York*, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.")).

[13] The court notes, however, that the fact that plaintiff was acquitted at trial does not indicate that probable cause to arrest him was lacking in the scenario that plaintiff described. *See McClenic v. Shmettan*, No. 15-CV-705, 2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (citing inter alia *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001) ("The existence of probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges.")). This is true regardless of plaintiff's claim that the officer told plaintiff that he would not "beat" the charges "this time." (SOF ¶ 4 at 5). Thus, even though I am allowing the claim to proceed, the court makes no findings regarding the ultimate issue of probable cause.

well established that verbal abuse and profanity is not actionable conduct under 42

U.S.C. § 1983, because it does not violate any protected federal right. *See Purcell v.*

*Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Crown v. Croce*, 967 F. Supp.

101, 104 (S.D.N.Y.1997); *Beal v. City of New York*, No. 92 Civ. 0718, 1994 WL

163954, at *6 (S.D.N.Y. Apr. 22, 1994) ("mere verbal abuse, and even vile language,

does not give rise to a cognizable claim under Section 1983"), *aff'd*, 89 F.3d 826 (2d

Cir.1995).

## V.    <u>Municipal Liability</u>

### A.    **Legal Standards**

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court

outlined the limited circumstances under which a municipality may be liable under

Section 1983.  Only when the municipality, through the execution of its policies,

actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.*

at 694.  To establish municipal liability, the policy must actually cause the violation of

constitutional rights; it must be the moving force behind the violation.  *Id.*; *Dominguez*

*v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

### B.    **Application**

Plaintiff has named Onondaga County as a defendant in this action, but the

municipal defendants are employees of the City of Syracuse, and when prosecuting a

criminal matter, the district attorneys are acting in a quasi-judicial capacity, and they

represent the State, not the County.[14] *Shanks v. Otsego County New York*, No. 6:17-CV-

---

[14] It is only where claims center on the administration or management of the district attorney's
office that a district attorney may be found to have acted as a "policy maker" for purposes of section
1983 liability. *Shanks, supra* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir.
1993)).  In this case, plaintiff challenges only the district attorney's decisions regarding prosecution of

719, 2017 WL 4220463, at *7 (N.D.N.Y. July 24, 2017) (Rep't-Rec.), *adopted*, 2017 WL 4221070 (N.D.N.Y. Sept. 21, 2017) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)).  None of the defendants is employed by Onondaga County in the circumstances described in plaintiff's complaint.  Plaintiff makes no separate claim against Onondaga County for municipal liability.  Thus, the complaint may be dismissed with prejudice as against Onondaga County.

## VII.   **Chief of Police Frank Fowler**

### A.   **Legal Standards**

As stated above, personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d at 435.  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon*

---

plaintiff's criminal cases, and therefore, the district attorney is not an Onondaga County policy maker.

*v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B.    Application

In this case, plaintiff does not allege that defendant Fowler, the Chief of police was actually present during any of the police encounters that plaintiff described. Plaintiff never mentions defendant Fowler at all in the amended complaint. It appears that defendant Fowler was added to the caption solely because he is the Chief of Police in an attempt to establish liability based upon respondeat superior. Plaintiff may not bring such a claim. There is no indication that supervisory liability has been alleged in any of the ways described above in *Williams*. There is no allegation that defendant Fowler even knew about the plaintiffs arrests or had any involvement in the acts plaintiff described. Thus, the complaint may be dismissed in its entirety without

prejudice as against defendant Fowler based on a lack of personal involvement.

## VIII. <u>Opportunity to Amend</u>

### A.    Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court

should afford the plaintiff the opportunity to amend at least once; however, leave to

re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer*

*& Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt

by the plaintiff to amend some of the claims in this complaint would be futile, but finds

that he should be allowed to amend others as discussed herein.

### B.    Application

The claims against both district attorneys may be dismissed **with prejudice** to

the extent that plaintiff challenges any decisions or actions by the district attorneys

related the prosecution of criminal charges against plaintiff or the prosecution of

plaintiff's still-pending appeal. The complaint may be dismissed in its entirety as

against Onondaga County because plaintiff makes no claims against Onondaga County,

and the County is not the relevant municipality by which any of the defendants are

employed. The claims against defendants Kalil, Giarusso, and Sergeant may also be

dismissed with prejudice as stated above with respect to the July 2015 arrest.

Although any claims regarding the July 18, 2015 arrest should be dismissed

without prejudice, as against defendants Jones, Ciciriallo, Springer, Blake, and Szakecs,

plaintiff may not amend his complaint until the charges have been reversed by an

appellate tribunal or been called into question by a successful habeas corpus petition.

Plaintiff's claims relative to the December 2015 may go forward as against defendants

Giarusso and Blake without requiring amendment. The claims surrounding the August

7, 2016 incidents should be dismissed without prejudice as against defendants Breen, Taylor, Ryan, and Tassini, but may be allowed to go forward as against defendants King, Picotta, and Blake.

Although the court is ordering that the complaint go forward as to the December 2015 arrest as against defendants Giarusso and Blake; the May 18, 2016 incident as against defendants Henderson and Ballagh; and the August 2016 arrest as against King, Picotta, and Blake, any service of process on these defendants should await the District Court's decision on this recommendation.[15]  I will issue my recommendation below based on the individual incidents for ease of understanding.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS AGAINST DEFENDANTS FITZPATRICK, MANFREDI, KALIL, and SARGENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITH PREJUDICE AS AGAINST DEFENDANT GIARUSSO - ONLY WITH RESPECT TO THE JULY 2015 INCIDENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITHOUT PREJUDICE AS TO:**

    1.    Defendants Jones, Ciciriallo, Springer, Blake, and Szakecs with

---

[15] If plaintiff ultimately amends his complaint with respect to any of the claims dismissed without prejudice, he is advised that any amended complaint must be a complete pleading which shall repeat all the surviving claims including any amendments.  Any amended complaint will **supercede** the original, must stand on its own, and must not incorporate any facts by reference to another pleading.

respect to the July 2015 incident.

    **3.**    Defendants Breen, Taylor, Ryan, and Tassini with respect to the August 7, 2016, and it is

**ORDERED**, that the amended complaint go forward as against defendants **BLAKE and GIARUSSO (Dec. 26, 2015 incident); HENDERSON** and **BALLAGH (May 18, 2016 incident)**, and defendants **KING, PICOTTA, and BLAKE (Aug. 7, 2016 incident)**, but that service of process as against these defendants await the District Court's decision on this recommendation, and it is

**ORDERED**, that when the District Court issues a decision on this Recommendation, the case be returned to me for further proceedings, including any necessary orders regarding service of the complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 2, 2018

                                        Hon. Andrew T. Baxter
                                        U.S. Magistrate Judge