# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

HAITHEM HASAN,

Plaintiff,

v.                                                          5:18-CV-806
                                                            (ATB)

ONONDAGA COUNTY, et al.,

Defendants.

HAITHEM HASAN, Plaintiff, pro se
MARY L. D'AGOSTINO, Asst. Corp. Counsel for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to the undersigned for all further proceedings, including entry of judgment pursuant to 28 U.S.C. § 636(c) and the consent of the parties on May 16, 2019. (Dkt. No. 38).  Plaintiff brings this civil rights complaint against various defendants claiming excessive force, false arrest, and malicious prosecution.  Presently before the court are two motions for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. Nos. 50, 58).[1]  Plaintiff has responded in opposition to both motions. (Dkt. No. 68).  Defendants filed a reply memorandum.[2] (Dkt. No. 74).

## I.    Procedural Background

Plaintiff filed his original complaint on July 19, 2018. (Dkt. No. 1).  The case was administratively closed because of an insufficiency in plaintiff's application for in forma pauperis ("IFP") status. (Dkt. No. 2).  On July 11, 2018, the case was reopened after

---

[1] Defendants amended their memorandum of law to correct an error in the first memorandum. (Dkt. No. 52).

[2] Defendants have also made a motion to unseal state court grand jury documents. (Dkt. No. 72).  This court will address the motion to unseal in a separate order.

plaintiff filed a First Amended Complaint ("FAC"), together with the appropriate documents for a proper IFP application. (Dkt. Nos. 3-8). On August 2, 2018, I reviewed the FAC and recommended[3] that some claims proceed while other claims and defendants be dismissed from the action. (Dkt. No. 9).

While my August 2, 2018 Order and Report-Recommendation ("ORR") was pending before U.S. District Court Judge Gary L. Sharpe, on August 15, 2018, plaintiff filed his Second Amended Complaint ("SAC"). (Dkt. No. 10). On August 24, 2018, Judge Sharpe adopted my August 2, 2018 ORR in its entirety and construed plaintiff's August 15th filing as a motion to amend the FAC. (Dkt. No. 11). Judge Sharpe referred the motion to amend to me, and on August 30, 2018, I granted the motion in part, and denied the motion in part. (Dkt. No. 12). On December 4, 2018, plaintiff added defendants Officers Robert Ripley and Jeremy Decker as the John Doe police officers in conjunction with the May 18, 2016 arrest.[4] (Dkt. No. 26). Thus, the operative pleading is plaintiff's SAC with the following remaining claims and defendants, as outlined by defense counsel in her amended memorandum of law:

> (1)     December 26, 2015: Defendants Ryan Blake and J.M. Giarusso - Count 1 - federal false arrest, excessive force, and malicious prosecution. Count 3 - state law claims - assault/battery; false arrest/imprisonment and malicious prosecution.
>
> (2)     May 18, 2016: Defendants Frank Fowler, Scott

---

[3] At that time, the parties had not yet consented to proceed before me. Thus, I was required to recommend any dispositive action in the case. 28 U.S.C. § 636(b).

[4] On May 16, 2019, plaintiff and defendants filed the consent to proceed before a Magistrate Judge, and the case was assigned to me for all further proceedings by Senior Judge Sharpe. (Dkt. No. 38).

Henderson, J. Ballagh, Robert Ripley, Jeremy Decker - Counts 1 and 3.

    (3)    August 7, 2016: Defendants Chad King, Ryan Blake, Chad Picotte, Jacob Breen - Counts 1 and 3.

    (4)    Municipal Liability Claim against the City of Syracuse - Count 2.

As stated above, defendants have made two motions for judgment on the pleadings in this case. (Dkt. Nos. 50, 58). The first motion argues only that all of plaintiff's New York State law causes of action should be dismissed because he failed to file a timely notice of claim. (Dkt. No. 50). The second motion addresses personal involvement, municipal liability, and the availability of punitive damages. (Dkt. No. 58). Plaintiff filed a response in opposition to the defendants' motions. (Dkt. No. 68), but only addressed the issues raised in the second motion.

## II.   <u>Facts</u>

### A.   December 26, 2016

Plaintiff alleges that he was at the Mobil Gas Station at 631 South Geddes Street in Syracuse, New York with approximately 50 other individuals. (SAC ¶ 4 at pp.3-4).[5] Plaintiff states that a fight broke out, and "shots" were fired, but no one was injured. (*Id.* at 4). Plaintiff states that, after the shots were fired, "everyone began to flee." However, when the police arrived, plaintiff was still on the scene, just trying to make sure that his mother and other family members were okay. (*Id.*)

Plaintiff claims that defendant Officers Blake and Giarusso approached him,

---

[5] Plaintiff has numbered the pages of the SAC at the bottom-center of the page. The court will refer to paragraphs and page numbers as assigned by the plaintiff to his pleading.

stating "that's Hasan." They grabbed plaintiff's arm when he refused to speak with them.[6] Plaintiff states that he "continued" to walk away, and defendants pursued him. (*Id.*) Plaintiff claims that the officers used excessive force to tackle him, bringing him to the ground. They then kicked, punched, and used their sticks to beat plaintiff, while asking him why he ran away from them. (*Id.*) Plaintiff states that he explained to them that he had "every right" not to speak with the officers and "to be left alone." Plaintiff alleges that the officers continued beating plaintiff as his family and friends watched. (*Id.*) Plaintiff states that he suffered severe cuts, scrapes, and bruises to his face and body, which caused a substantial amount of pain for months. (*Id.* ¶ 4 at pp. 4-5).

Plaintiff was arrested as a result of this incident and was told that he was being charged with the "shots fired" incident. (*Id.* ¶ 4 at p. 5). Plaintiff was held on substantial bail, and he was told that the prosecutor had "a witness." (*Id.*) He was detained until February 24, 2016. However, the grand jury did not indict him, and the charges against him were dismissed. Plaintiff alleges excessive force, false arrest/imprisonment, and malicious prosecution.

**B.    May 18, 2016**

Plaintiff alleges that on May 18, 2016, he was walking by a house at 309 Merriman Avenue, when he was falsely arrested and charged with criminal possession of a controlled substance in the third and seventh degrees. (SAC ¶ 5 at pp.5-6). Plaintiff states that defendants Henderson and Ballagh had been investigating the Merriman

---

[6] The SAC actually states that "[d]efendants begin [sic] to grab plaintiff's arm after refusing to speak with him and plaintiff continue to walk away when defendants pursue plaintiff using excessive force." (SAC ¶ 4 at p. 4). It is clear from the rest of plaintiff's factual recitation that he refused to speak with the officers and "continued" to walk away when they pursued him.

residence for two months for "drug sales and violent conduct." (*Id.* at 6). Plaintiff states that he was not a "named" suspect in the investigation. On May 18, 2016, approximately forty officers, who had arrived in a U-Haul truck and other unmarked vehicles were in the process of raiding and searching the residence. (*Id.*)

Plaintiff was apprehended by defendants Henderson, Ripley, and Decker. (*Id.*) Plaintiff claims that these three defendants used excessive force in apprehending him, assaulting him and beating him "into the ground" until he lost consciousness. Plaintiff was then handcuffed face-down on the ground for two hours. Plaintiff claims that defendant Henderson continued the "assault" even after plaintiff was face-down on the ground in handcuffs. (*Id.*) Plaintiff claims that family and friends "arrived" to see the chaos unfold and began to video tape the incident. (*Id.*) Plaintiff states that Officers Timothy Gallanagh, Mamoun Abraham,[7] and defendant then-Chief of Police Frank Fowler witnessed the assault. (*Id.*) Plaintiff states that defendant Fowler was on the scene "taking names" and other "information," when he witnessed the assault. (*Id.* at 6-7).

Plaintiff states that "another" officer arrived with a camera and asked plaintiff whether he needed medical attention, but that defendant Henderson "flinched" at plaintiff and told the other officer that plaintiff was "okay, he fell, ain't that right Mr. Hasan?" (*Id.* at 7). Plaintiff states that he was afraid of defendant Henderson and therefore agreed with him. (*Id.*) On May 19, 2016, while plaintiff was being arraigned on the charges, he discovered that he was also being charged with resisting arrest and

---

[7] Plaintiff did not name either Officer Gallanagh or Abraham as defendants, even though plaintiff did name former-Chief Fowler.

obstruction of governmental administration. (*Id.*) Plaintiff claims that his attorney told him that he was being charged with these additional crimes to justify the assault. (*Id.*) Plaintiff states that the grand jury returned a "no bill" as to all the charges. Plaintiff asserts excessive force, false arrest/imprisonment, and malicious prosecution against defendants Henderson, Ballagh, Fowler, Ripley, and Decker.

### C.    August 7, 2016

Plaintiff claims that he was unlawfully arrested in conjunction with an incident of "shots fired" at a Mobil gas station at 631 Geddes Street in Syracuse. (SAC ¶ 6 at pp.7-8). Plaintiff states that, at the time of the "shots fired" incident, he and two other individuals were on a different street, in a car which was parked in a driveway. (*Id.*) Plaintiff states that there was no complaint against him, his companions, or the vehicle in which they were sitting. (*Id.* at 8).

Plaintiff states that defendant King arrived first at the Geddes Street location and reported "nothing of significance pertaining to the shots fired." (*Id.*) Defendant King left the Geddes Street location and drove to Merriman Avenue, where plaintiff and his the two other individuals were seated in the car in a driveway. (*Id.*) Defendant King turned his patrol car spotlight on the vehicle and saw all three occupants get out of the vehicle "and flee." (*Id.*) Defendant King identified plaintiff and began to pursue him, while, at the same time, he radioed in plaintiff's name and the clothing he was wearing. (*Id.*) Plaintiff states that he was "detained" by defendants Blake and Picotte, who allegedly used excessive force in apprehending the plaintiff. (*Id.*) Plaintiff claims that they punched him, kicked him, and placed him in extremely tight handcuffs. They told plaintiff that he was being detained for trespass and left him in the patrol car for two

hours with the heat turned up. (*Id.* at 8-9)

Plaintiff claims that defendants Blake and Breen told plaintiff that, although he "beat" them in December of 2015, they had a weapon "this time." (*Id.* at 9). The officers apparently found a gun or guns that had been abandoned when the individuals fled from the car. Plaintiff states that the other two individuals who were in the car with him were apprehended and released, even though one of them confessed that the gun belonged to him. (*Id.*) However, plaintiff claims that defendant Breen later "coerced" the individual into stating that the gun belonged to plaintiff. The other occupant in the car was on parole and "helped" defendant Breen seize a .40 caliber handgun in return for his release. (*Id.*) Plaintiff states that this information was discovered at his subsequent trial. Plaintiff states that he was charged with criminal possession of a weapon, second degree. (*Id.*)

Plaintiff states that he had a suppression hearing, at which defendant King testified that he had no reasonable suspicion to link plaintiff with criminal activity on August 7, 2016 to justify his stop, pursuit, and seizure. (*Id.* at 10). Plaintiff states that his attorney moved to dismiss the charges, but her motion was denied, and a trial date was set. (*Id.*) Shortly before trial, plaintiff turned down a plea offer, and on November 17, 2017, plaintiff was acquitted after a jury trial. (*Id.*) Plaintiff alleges that defendants King, Blake, Picotte and Breen are liable for excessive force, false arrest/imprisonment, and malicious prosecution. (*Id.* at 11).

Plaintiff has also included the City of Syracuse as a defendant, alleging that the City encouraged and "ratified" the above unconstitutional behavior. (SAC - Second

Cause of Action).  With respect to the City, plaintiff lists various[8] areas where he believes that the City is lacking in its supervision of the defendants.  These areas include training for stopping, detaining, arresting, and charging individuals; using force; "monitoring" officers with emotional problems; failing to take disciplinary action against offending officers; and failing to follow "proper" procedures. (SAC ¶ 8 at 13).

## III.   **Judgment on the Pleadings**

### A.    **Legal Standards**

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12©).  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted).  *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6).  *Id.*

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

---

[8] Some of plaintiff's listed areas are duplicative.  Thus, the court will only summarize the specific claims.

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-

1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## IV.   New York State Law Claims

### A.   Legal Standards

In federal court, state law notice-of-claim statutes apply to supplemental state law claims. *Walker v. Raja*, No. 17-CV-5202, 2020 WL 606788, at *12 (E.D.N.Y. Feb. 7, 2020) (citing *Reyes v. City of New York*, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014). "In order to maintain a state law tort claim against a New York municipality or any of its officers, agents, or employees acting within the scope of their employment, a plaintiff must have served a 'notice of claim' upon the municipality within 90 days of the date of accrual of the cause(s) of action." *Id.* (citing N.Y. Gen. Mun. L. §§ 50-e, 50-i(1)(b); *Przybyla v. County of Suffolk*, No. 09-CV-5129, 2017 WL 1274051, at *2 (E.D.N.Y. Mar. 3, 2017) (discussing the notice of claim filing requirement); *Marshall v. Downey*, No. 09-CV-1764, 2010 WL 5464270, at *7 (E.D.N.Y. Dec. 27, 2010) (same)). The purpose of the notice-of-claim statutes is to give the municipality an adequate opportunity to investigate the claim "in a timely and efficient manner," and in the appropriate circumstances, to settle claims without the risk and expense of litigation. *Id.*

### B.   Application

In his opposition papers, plaintiff has addressed only the substantive issues that the defendants address in their second motion for judgment on the pleadings. Plaintiff has not opposed the defendants' claim that plaintiff failed to file a timely notice-of-claim for his New York State law claims. Because the law is clear that I must use New York State law to consider supplemental New York State law claims, I must dismiss

plaintiff's state law claims based on plaintiff's failure to file a timely notice of claim. Thus, plaintiff's third Cause of Action (SAC ¶ 10) alleging assault, battery, false arrest, false imprisonment, and malicious prosecution is dismissed as against all defendants.[9]

## V. **Personal Involvement**

### A. **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*,

---

[9] The court must point out that plaintiff's federal causes of action for false arrest/imprisonment, and malicious prosecution mirror the standards of his New York State law causes of action. Thus, plaintiff will still be able to make these claims in his federal causes of action.

556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

B.    **Application**

1.    **May 18, 2016 Incident (Defendants Henderson, Ballagh, Fowler, Ripley, Decker)**

Defendants argue that none of the above defendants was personally involved in the plaintiff's alleged malicious prosecution for the May 18, 2016 charges. In addition, defendants Ballagh and Fowler argue that they were not personally involved in the use of force or in plaintiff's arrest.

Generally, there is a rebuttable presumption that criminal actions are initiated by prosecutors, not the arresting officers, and that the prosecutors exercise independent judgment whether to initiate and/or continue a criminal proceeding. *Culpepper v. City of*

*New York*, No. 14-CV-6585, at *5 (S.D.N.Y. Sept. 21, 2016).  However, the

presumption may be rebutted where an officer "'play[s] an active role in the

prosecution, such as giving advice and encouragement or importuning the authorities to

act.'" *Id.* (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)).

The presumption may also be rebutted if the officer creates false information which is

likely to influence a jury's decision and forwards the information to prosecutors or

withholds relevant and material information from the prosecutor. *Id.* (citing *Barone v.*

*United States*, No. 12 Civ. 4103, 2014 WL 4467780, at *17 (S.D.N.Y. Sept. 10, 2014)

(quoting *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006))

(internal alterations and quotation marks omitted).

The court notes that plaintiff's opposition confuses the issue of personal

involvement with the merits of a false arrest or malicious prosecution claim.

Defendants do not make arguments on the merits at this time, although they may make

such arguments in a motion for summary judgment.  In his response, plaintiff asks the

court to carefully examine a substantial number of documents that he filed as his

"mandatory disclosures" in this case. (Dkt. No. 68 at 7-8) (citing Dkt. No. 25).  Plaintiff

filed Dkt. No. 25 in response to the court's pretrial scheduling order, and in support of

his request to add the names of the John Doe defendants.  However, he did not realize

that mandatory disclosures are exchanged by the parties alone and should not be filed

with the court.  Thus, the documents attached to Dkt. No. 25 should not have been

included with plaintiff's request to add defendants Ripley and Decker to the complaint.

In any event, defendants' motion is for judgment on the pleadings and is directed

to the pleadings alone as stated above.  The court cannot consider matters outside the

complaint without converting the motion to one for summary judgment and allowing both sides a chance to make arguments. Because the documents in question should not have been filed, the court declines to convert the defendants' motion at this time and will not consider the documents filed by plaintiff. The court is not dismissing the plaintiff's SAC in its entirety, and the parties will have the opportunity for further discovery and argument at a later time. I am making my decision today based on plaintiff's SAC, and I have not reviewed the documents attached to Dkt. No. 25.

With respect to the May 18, 2016 incident, in the SAC, plaintiff makes no claims against defendant Ballagh, other than mentioning that this defendant took part in defendant Henderson's two-month[10] investigation of the crimes occurring at 309 Merriman Avenue. Plaintiff does not allege that defendant Ballagh filed charges against plaintiff or was even present at the scene of the allegedly false arrest. There is no indication that this defendant took part in the arrest, alleged excessive force, or the ultimate prosecution of plaintiff's case.

In plaintiff's response to the defendant's motion, he now claims that defendant Ballagh should be liable because he took part in the investigation and knew that plaintiff's name was not on the list of suspects. (Dkt. No. 68 at 9). Plaintiff now also claims that defendant Ballagh "witnessed" the assault, but there is no indication in the SAC that this defendant was at the scene or that he "witnessed" the assault but failed to intervene. Plaintiff has amended his complaint twice and has failed to ever mention defendant Ballagh's presence or involvement in the excessive force, arrest, or the

---

[10] Plaintiff's response to defendants' motions now states that the investigation lasted six months. (Dkt. No. 68 at 8).

charges against plaintiff. His belated and conclusory attempt at alleging personal involvement by this defendant in a response to defendants' motion is insufficient. Thus, the complaint may be dismissed in its entirety as against defendant Ballagh for lack of personal involvement.

Plaintiff also does not claim that defendant Fowler was involved in the prosecution of the May 18, 2016 charges. Defendant Fowler is alleged to have been present on the scene and "witnessed" the excessive force, but nothing further is said about defendant Fowler. Thus, plaintiff does not plausibly state a claim of malicious prosecution against defendant Fowler. Plaintiff alleges that defendant Fowler was present at the scene, taking names and information from the "defendants," and he witnessed the assault. (SAC ¶ 5 at p.7). Defendants argue that this allegation is "conclusory," but at the pleading stage, the court must assume the facts as stated by plaintiff are true. If defendant Fowler was present at the scene, witnessed the assault, and failed to intervene, assuming that he had the reasonable opportunity to do so, then he would have been "personally involved" in the alleged excessive force. Whether defendant Fowler was present, whether he witnessed the assault, and whether if so, he had the opportunity to intervene are all questions that this court cannot determine on a motion for judgment on the pleadings.[11] The court makes no finding regarding whether this claim could withstand a properly supported motion for summary judgment, but must deny the defendants' motion at this time with respect to the claim of excessive

---

[11] To the extent that plaintiff's response to the defendants' motion discusses defendant Fowler's alleged failure to train or investigate, these claims relate to defendant Fowler's official capacity and would implicate municipal liability, which will be discussed below.

force as against defendant Fowler in his individual capacity.

Plaintiff also alleges that, at his arraignment, he discovered that he had been charged with two additional crimes, relating to the arrest.[12]  Plaintiff alleges that, in addition to the drug charges, he was charged with resisting arrest and obstruction of governmental administration.  Plaintiff claims his attorney told him that these charges were added to the controlled substance charges in order to justify the excessive force used to arrest him.  (SAC ¶ 5 at p.7).  The court must assume that this allegation is true in addressing a motion for judgment on the pleadings.  Hence, plaintiff has plausibly alleged that defendants Henderson, Ripley, and Decker, (the officers involved in the arrest and alleged excessive force), conveyed potentially false information to the prosecutor in order to justify additional charges, which would in turn, justify the force used to apprehend the plaintiff.[13]  Although I make absolutely no findings in regard to the ultimate merits of this claim, I will not, at this time, dismiss the malicious prosecution claim as against defendants Henderson, Ripley, and Decker for the May 18, 2016 incident.

### 2.      August 7, 2016 (Defendants King, Blake, Breen, and Picotte)

Defendants argue that the any excessive force claim related to the August 7, 2016 arrest may be dismissed as against defendants King and Breen because they were not personally involved in the use of force against plaintiff and were not present when

---

[12] As stated above, the original arrest was for drug possession.

[13] As stated above, plaintiff only states that defendant Fowler was present and witnessed the excessive force.  Plaintiff does not claim that defendant Fowler was personally involved in filing the additional charges against plaintiff.  Any information regarding those charges would have been obtained from the officers who arrested the plaintiff.

plaintiff was apprehended. The court agrees with the defendants' argument. In the SAC, plaintiff alleges that defendant King responded to the "shots fired" call, and defendant King drove to the Merriman Avenue address where plaintiff and two others were in a parked car. Plaintiff states that, after the three individuals fled, defendant King called-in the plaintiff's description. However, plaintiff was detained by defendants Blake and Picotte, who allegedly used excessive force in apprehending him. (SAC ¶ 6 at 8-9). Neither defendant King, nor defendant Breen is alleged to have participated, nor have been present during the arrest. Thus, any claim of excessive force must be dismissed as against defendants King and Breen for lack of personal involvement.

Defendants also argue that any claim of malicious prosecution should be dismissed as against defendants King, Picotte, and Breen because only defendant Blake is alleged to have coerced a witness into stating that the firearm belonged to the plaintiff. There is no indication that defendants King, Picotte, and Breen were involved in bringing charges or pursuing the prosecution against the plaintiff. Thus, claims of malicious prosecution relative to the August 7, 2016 incident will be dismissed as against defendants King, Picotte, and Breen.

## VI.    Municipal Liability

### A.    Legal Standards

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v.*

*Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), (Rep.-Rec.)*, adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id*.; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). However, plaintiff cannot simply allege the existence of a policy and/or custom without alleging "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (internal citation omitted).

In addition, the municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the

constitutional violation, than was the policy in *Monell* ").  To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton*, 489 U.S., at 388).  "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Id.* (quoting *Canton*, 489 U.S. at 389) (alterations in original).

## B.    Application

In this case, plaintiff's claims against the City are contained in Count 2 of the SAC. (SAC ¶ 9(A)-9(I)).  This cause of action (Count 2) consists of plaintiff's list of the areas where he believes the City has failed to supervise its police officers.  Where plaintiff's claims against the municipality consist entirely of "conclusory, boilerplate allegations in [an] attempt to establish municipal liability," the complaint may be dismissed. *Lee v. Town of Southampton*, No. 18-CV-3167, 2020 WL 1237198, at *10 (E.D.N.Y. Feb. 21, 2020).  None of the statements on plaintiff's list are supported by any facts in the SAC, other than by plaintiff's allegations against the individual officers on the three dates in question.  The list appears to simply be a recitation of every possible "failure to train," without any corresponding facts in the SAC.

On this list is a claim that the defendant City fails to "monitor" officers with emotional problems. (SAC ¶ 9(D)).  There are absolutely no facts in the SAC relating to any such problems.  Plaintiff does not allege, nor is there any indication how he would know, that any defendant had "emotional problems," or how that would be relevant to his case.  The fact that another individual is suing the City for other officers' actions that plaintiff believes are similar to his case is also insufficient to allege municipal policy or

custom. *Connick*, 563 U.S. at 63.

In his opposition papers, plaintiff cites *Arrindel-Martin v. City of Syracuse*, No. 5:18-CV-780, 2018 WL 6622193, at *6 (N.D.N.Y. Dec. 18, 2018), which states that a plaintiff "is not required to provide voluminous specific detail of many specific substantiated complaints in order to survive a motion to dismiss*." (citing Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (finding that identification of two other instances of a similar violation were sufficient to create a plausible inference of a widespread practice for the purposes of a motion to dismiss)). While plaintiff's citation to *Arrindel-Martin* is correct, plaintiff failed to mention that there were several other citations following *Ferrari*, all of which held that a few examples of similar conduct did not justify imposing municipal liability. *Id.* (citing *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (finding that two or three instances over several years of officers abusing the rights of black people and one incident in which an officer displayed a disposition to abuse the rights of black people fell short of showing a policy, custom, or usage of officers abusing black people); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (finding that four examples did not establish a practice so persistent or widespread so as to justify the imposition of municipal liability)). In fact, the court dismissed Arrindel-Martin's claims against the municipality.

As in Arrindel-Martin, plaintiff here has cited no instances similar to his alleged facts. The fact that a different individual also had a claim relating to the May 18, 2016 raid on 309 Merriman Avenue does not make plaintiff's claims against the City "plausible." There is no indication that the two situations are even similar. Thus, the claims against the City of Syracuse may be dismissed at this time.

## VII. Punitive Damages

### A. Legal Standard

Punitive damages may be awarded for violations of federal law where a defendant acts with "reckless or callous disregard for the plaintiff's rights, [and] intentional[ly] violat[es] federal law." *Ragin v. Harry Macklow Real Estate Co.*, 6 F.3d 898, 909 (2d Cir. 1993) (quoting *Smith v. Wade*, 461 U.S. 30, 51 (1983) and citing *United States v. Balistrieri*, 981 F.2d 916, 936 (7th Cir. 1992)).

Because plaintiff's claims for excessive force and some of the claims for malicious prosecution are surviving, the court declines to dismiss the claim for punitive damages at this time. If plaintiff should succeed on an excessive force claim or a claim that a defendant intentionally charged plaintiff with additional crimes to "cover up" an assault, it is possible that a jury could determine that there was a "reckless or callous disregard for the plaintiff's rights," and an intentional violation of federal law by the individual defendant or defendants. *See Thomas v. Kelly*, 903 F. Supp. 2d 237, 269 (S.D.N.Y. 2012) (Carter, J.) (collecting cases "awarding] punitive damages against police officers who use excessive force against a defenseless plaintiff"). While punitive damages would not be available as against the City,[14] I am dismissing the SAC against the municipality, and thus, this will not be an issue.

**WHEREFORE**, based on the findings above it is

_____

[14] It is well-settled that punitive damages are not available against a municipality. *Villa v. County of Erie*, No. 13-CV-467, 2020 WL 33125, at *10 (E.D.N.Y. Jan. 2, 2020) (citing inter alia *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981)); *None v. County of Catechu*, 511 F. Supp. 2d 355, 366 (E.D.N.Y. 2007) (citing *Disturb v. Hot*, 343 F.3d 172, 182 (2d Cir. 2003) (citing *Monell*, 436 U.S. at 690–91)).

**ORDERED**, that defendants' first motion for judgment on the pleadings (Dkt. No. 50) is **GRANTED**, and that plaintiff's state law claims (SAC Count 3) are **DISMISSED**, and is it

**ORDERED**, that defendants' second motion for judgment on the pleadings (Dkt. No. 58) is **GRANTED IN PART and DENIED IN PART** as follows:

(1) **GRANTED** as to City of Syracuse and Frank Fowler in his Official Capacity only, and the SAC is **DISMISSED** as against the City and Frank Fowler in his official capacity only (SAC Count 2).

(2) **GRANTED,** as against defendant **Fowler** as to any claim for false arrest and malicious prosecution with respect to the May 18, 2016 incident.

(3) **DENIED**, as against defendant **Fowler** as to the excessive force claim.

(4) **GRANTED**, as to all claims against defendant **Ballagh**, and the SAC is **DISMISSED** in its entirety as against defendant **Ballagh**.

(5) **DENIED**, as to claims of malicious prosecution against defendants **Henderson, Ripley, and Decker** with respect to the May 18, 2016 incident.

(6) **GRANTED**, as to **excessive force** claims against defendants **Breen and King**, with respect to the August 7, 2016 incident.

(7) **GRANTED**, as to **malicious prosecution** claims against defendants **King, Picotte, and Breen** with respect to the August 7, 2016 incident.

Based on the court's findings above, the surviving claims are as follows according to the date of the incident:

(A)     **December 26, 2015**:
(1)     False Arrest, Excessive Force, and Malicious Prosecution against

defendants Blake and Giarusso.

    (B)  **May 18, 2016**:
        (1)  False Arrest, Excessive Force, and Malicious Prosecution against defendants Henderson, Ripley, and Decker.
        (2)  Excessive Force against defendant Fowler.

    (C)  **August 7, 2016**:
        (1)  False Arrest against defendants King, Blake, Picotte, and Breen.
        (2)  Excessive Force against defendants Blake and Picotte.
        (3)  Malicious Prosecution against defendant Blake.

Dated: March 30, 2020

Andrew T. Baxter
U.S. Magistrate Judge